*Law Offices of*
**BONNETT, FAIRBOURN,**
**FRIEDMAN & BALINT, P.C.**
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016
(602) 274-1100
Wendy J. Harrison (014461)
wharrison@bffb.com
Ty D. Frankel (027179)
tfrankel@bffb.com

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| DAVID F. BISHOP, JASON S. CONNER, NATHAN C. ADKINS and JEFFREY A. KOLB, <br><br> Plaintiffs, <br> v. <br> P.I.C. CONSTRUCTION, INC., an Arizona Corporation, d/b/a EPCON ELECTRIC, LLC, an Arizona Limited Liability Company; PABLO P. CURIEL and JANE DOE CURIEL, husband and wife; and SEAN DONWEN and JANE DOE DONWEN, husband and wife, <br><br> Defendants. | Case No. <br><br> **COMPLAINT** <br><br> **[JURY TRIAL DEMANDED]** |

Plaintiffs David F. Bishop, Jason S. Conner, Nathan C. Adkins and Jeffrey A. Kolb allege the following for their Complaint against P.I.C. Construction, Inc., d/b/a Epcon Electric, LLC; Pablo P. Curiel; Jane Doe Curiel; Sean Donwen; and Jane Doe Donwen (collectively "Defendants" or "P.I.C. Construction"):

**NATURE OF THE CASE**

1. Plaintiffs bring this action against Defendants for a variety of claims related to Defendants unlawful failure to pay proper wages to their employees. Defendants failed to pay overtime to all of the Plaintiffs in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA") and the Arizona Wage Statute, A.R.S. §§ 23-351, 23-353, and 23-355. In addition, Defendants made improper deductions for lunch periods even

- 1 -

when employees worked through their lunches.  Also, Defendants have failed outright to pay promised and earned commissions to Plaintiff Bishop and have failed to pay Plaintiffs Adkins and Kolb for the last pay period in which they worked at the end of 2013.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter and the parties hereto under 29 U.S.C. § 216(b), and 28 U.S.C. § 1331.

3. Plaintiffs' state law claims are sufficiently related to the FLSA claim that it forms part of the same case or controversy.  This Court therefore has supplemental jurisdiction over Plaintiffs' claims under the Arizona Wage Statute pursuant to 28 U.S.C. § 1367 and claims based on breach of contract.

4. Venue is proper under 28 U.S.C. §§ 1391(b) and (c) because Defendants employed Plaintiffs in Maricopa County, Arizona; Defendants conduct business in that county; and all or a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

5. At all relevant times, Plaintiff David F. Bishop resided in Maricopa County, Arizona.  From in or around June 1, 2013 through in or around November 8, 2013, Plaintiff Bishop was a full time employee of Defendants.  Defendants hired Plaintiff as the General Manager of P.I.C. Construction, Inc. d/b/a Epcon Electric.

6. At all relevant times, Plaintiff Jason S. Conner resided in Maricopa County, Arizona.  From in or around March 17, 2013 through in or around November 13, 2013, Plaintiff Conner was a full time employee of Defendants.  Defendants hired Plaintiff as an electrician for P.I.C. Construction, Inc. d/b/a Epcon Electric.

7. At all relevant times, Plaintiff Nathan C. Adkins resided in Maricopa County, Arizona.  From in or around September 28, 2013 through in or around December 11, 2013, Plaintiff Adkins was a full time employee of Defendants.  Defendants hired Plaintiff as an electrician for P.I.C. Construction, Inc. d/b/a Epcon Electric.

8. At all relevant times, Plaintiff Jeffrey A. Kolb resided in Maricopa County, Arizona. From in or around September 28, 2013 through in or around December 11, 2013, Plaintiff Kolb was a full time employee of Defendants. Defendants hired Plaintiff as an electrician for P.I.C. Construction, Inc. d/b/a Epcon Electric.

9. Defendant P.I.C. Construction, Inc. is an Arizona Corporation, authorized to do business in Arizona. P.I.C. Construction, Inc., which does business as Epcon Electric, LLC, Epcon Solar, LLC, and Epcon Construction, LLC is a construction design and building company. It is a full service General Contractor offering construction and consulting services. P.I.C. Construction, Inc. employed Plaintiffs.

10. Defendants Pablo P. Curiel and Jane Doe Curiel are husband and wife. Jane Doe Pablo is a fictitious name for Pablo P. Curiel's wife. When her true name has been ascertained, this Complaint may be amended accordingly. Pablo and Jane Doe Curiel have caused events to take place giving rise to this Complaint as to which their marital community is fully liable. Pablo P. Curiel is President and CEO of P.I.C. Construction, Inc. The FLSA defines an "employer" as any individual who acts directly or indirectly in the interest an employer in relation to an employee. Pablo P. Curiel, in his roles for P.I.C. Construction, Inc., set policies with regards to the amount and manner of compensation of Plaintiffs and other employees. As a person who acts in the interest of P.I.C. Construction, Inc. in relation to their employees, Pablo P. Curiel is subject to individual liability under the FLSA.

11. Defendants Sean Donwen and Jane Doe Donwen are husband and wife. Jane Doe Donwen is a fictitious name for Sean Donwen's wife. When her true name has been ascertained, this Complaint may be amended accordingly. Sean Donwen and Jane Doe Donwen have caused events to take place giving rise to this Complaint as to which their marital community is fully liable. Sean Donwen is a Director of P.I.C. Construction, Inc. The FLSA defines an "employer" as any individual who acts directly or indirectly in the interest an employer jn relation to an employee. Sean Donwen, in his role for P.I.C. Construction, Inc., set policies with regards to the amount and manner of compensation of

1  Plaintiffs and other employees. As a person who acts in the interest of P.I.C. Construction, Inc., in relation to their employees, Sean Donwen is subject to individual liability under the FLSA.

12. Defendants are employers as defined in 29 U.S.C. § 203(d) and A.R.S. § 23-350.

13. Plaintiffs were employees as defined in 29 U.S.C. § 203(e)(1) and A.R.S. § 23-350, and were non-exempt employees under 29 U.S.C. § 213(a)(1) and 29 C.F.R. part 541.

## FACTUAL BACKGROUND

**A.    David F. Bishop**

14. David F. Bishop was hired as General Manager of P.I.C. Construction, Inc. d/b/a Epcon Electric on June 1, 2013. Defendants promised to pay Plaintiff Bishop $1,000.00 weekly salary plus 8% commission based on net profits. The email attached as Exhibit 1 confirms the agreement.

15. Plaintiff earned approximately $25,000.00 in commissions before his termination in November, 2013, but did not receive the agreed upon compensation.

16. Plaintiff Bishop was hired on a salary exempt basis. However, Defendants regularly made inappropriate deductions from Plaintiff Bishop's pay which voids the exemption.

17. For example, Defendants had a practice of deducting a day of pay from Plaintiff Bishop's weekly salary if Plaintiff Bishop was not seen in the office for a sufficient amount of time during that particular day, despite the fact that Plaintiff Bishop was conducting work out of the office. Defendants also had a policy of not paying for holidays or for sickness days.

18. Defendants have lost the salary exemption with respect to Defendant Bishop as a result of making these improper deductions.

///

///

19. Plaintiff Bishop usually worked between 50 and 60 hours per week. However, he was never paid the statutorily required rate for overtime of one and one-half times his regular rate of pay.

20. Plaintiff's employment with Defendants ended November 8, 2013 and he was not paid for all of the hours worked during that last work week.

**B.     Jason S. Conner**

21. Jason S. Conner was hired as an electrician/solar installer on March 17, 2013 at an hourly rate of $18.00. He performed electrical work and the installation solar panel systems in individual residences. He also served as his three man crew's foreman.

22. In or around July 13, 2013 to in or around September 27, 2013, Plaintiff Conner worked as a Superintendent for Defendants and was paid $1,000.00 per week on a salary exempt basis.

23. In or around September 28, 2013 to the end of Plaintiff Conner's employment for Defendants on November 13, 2013, Conner worked as a Field Supervisor at an hourly rate of $22.00.

24. During the periods when Plaintiff Conner was paid on an hourly basis, Conner was paid straight time, rather than overtime for hours worked over 40 per week. See paystub attached hereto as Exhibit 2.

25. In addition, Plaintiff Conner was not paid for all hours worked. He was required to arrive at Defendants' office location in the morning, pick up a company vehicle and a project folder for the project(s) assigned to their crew, drive with other employees in a company vehicle to Defendant's offsite warehouse and/or a supplier and obtain the materials necessary for the project, drive to the assigned project location and perform the work, and then make the return trip at the end of the project or the end of the day. It took, on average, approximately 1 to 2 hours to obtain the materials necessary for a project, for which he was not always paid.

///

///

26. When the assigned project location was local, it took, on average, approximately 30 minutes to an hour each way to drive to a project location for which he was not always paid.

27. The crew was often assigned projects out-of-town, for example, in Tucson, Kingman, Green Valley and Sierra Vista. When the assigned project was out-of-town, it took approximately 1.5 to 3 hours each way to drive to a project location for which he was not always paid.

28. In addition, Defendants deducted 30 minutes daily for lunch despite the fact that he was required to work through lunch on many occasions.

29. Plaintiff Conner's employment with Defendants ended November 13, 2013 and he was not paid for all of the hours worked during the last pay period.

**C.     Nathan C. Adkins**

30. Nathan C. Adkins was hired as an electrician/solar installer on September 28, 2013 at an hourly rate of $20.00. He performed electrical work installing solar panel systems in individual residences. He also served as his three man crew's foreman.

31. Plaintiff Adkins was paid straight time, rather than overtime for hours worked over 40 per week. See paystub attached hereto as Exhibit 3.

32. In addition, Plaintiff Adkins was not paid for all hours worked. He was required to arrive at Defendants' office location in the morning, pick up a company vehicle and a project folder for the project(s) assigned to their crew, drive with other employees in a company vehicle to Defendant's offsite warehouse and/or a supplier and obtain the materials necessary for the project, drive to the assigned project location and perform the work, and then make the return trip at the end of the project or the end of the day. It took, on average, approximately 1 to 2 hours to obtain the materials necessary for a project, for which he was not always paid.

33. When the assigned project location was local, it took, on average, approximately 30 minutes to an hour each way to drive to a project location for which he was not paid.

34. The crew was often assigned projects out-of-town, for example, in Kingman, Tucson, Lake Havasu City and Green Valley. When the assigned project was out-of-town, it took approximately 2 to 4 hours each way to drive to a project location for which he was not paid.

35. In addition, Defendants deducted 30 minutes daily for lunch despite the fact that Plaintiff Adkins was required to work through lunch on many occasions.

36. In or around November 15, 2013, Defendants stopped paying Plaintiff Adkins hourly and instead informed the crew of three electricians that they would be paid on a piecework basis at a rate of $0.13 per watt based on the solar panel systems they installed in individual residences. For example, if the size of a solar panel system installed was 8,000 watts, the crew would be paid $1,040.00 (8,000 x $0.13) and the crew members would split the $1,040.00.

37. In one instance, when a project was located in Tucson, Arizona, the crew was paid on a piecework basis at a rate of $0.16 per watt and the crew was required to pay for their own hotel accommodations.

38. Despite the change to payment by piecework, Plaintiff Adkins remained an employee of Defendants and was entitled to overtime pay for hours worked over 40 per week.

39. Defendants' maintained control over Plaintiff Adkins. The crew continued to report to and take direction from a P.I.C. Construction project manager and/or field supervisor. The crew was required by P.I.C. Construction to arrive at Defendants' office location in the morning, pick up a company vehicle, pick up a project folder from P.I.C. Construction for the project assigned to their crew, drive to Defendant's offsite warehouse and/or a supplier and obtain the materials necessary for the project, drive to the assigned project location, perform the solar panel system installation and related electrical work, take photos of the completed installation, complete the project paperwork, then return to Defendant's office location and turn in the completed project paperwork, submit the photos of the completed installation and return the company vehicle.

40. The crew completed approximately 11 projects on a piecework basis between in or around November 15, 2013 through in or around December 11, 2013.

41. In addition, although Plaintiff Adkins was not terminated until December 11, 2013, he was not paid any compensation for the last three projects the crew completed for Defendants. Payment was issued and mailed to Plaintiff Adkins on December 18, 2013 along with a letter signed by General Manager Eric Godard for the last three projects that the crew completed for Defendants. However, when Adkins attempted to cash the check, the bank informed Adkins that the check had been cancelled. See Exhibit 4.

**D.    Jeffrey A. Kolb**

42. Jeffery A. Kolb was hired as an electrician/solar installer on September 28, 2013 at an hourly rate of $19.00. He performed electrical work during the installation solar panel systems in individual residences.

43. Plaintiff Kolb was paid straight time, rather than overtime for hours worked over 40 per week. See paystub attached hereto as Exhibit 5.

44. In addition, Plaintiff Kolb was not paid for all hours worked. He was required to arrive at Defendants' office location in the morning, drive with other employees in a company vehicle to Defendant's offsite warehouse and/or a supplier and obtain the materials necessary for the project, drive to the assigned project location and perform the work, and then make the return trip at the end of the project or the end of the day. It took, on average, approximately 1 to 2 hours to obtain the materials necessary for a project, for which he was not always paid.

45. When the assigned project location was local, it took, on average, approximately 30 minutes to an hour each way to drive to a project location for which he was not paid.

46. The crew was often assigned projects out-of-town, for example, in Kingman, Tucson, Lake Havasu City and Green Valley. When the assigned project was out-of-town, it took approximately 2 to 4 hours each way to drive to a project location for which he was not paid.

47. In addition, Defendants deducted 30 minutes daily for lunch despite the fact that Plaintiff Kolb was required to work through lunch on many occasions.

48. In or around November 15, 2013, Defendants stopped paying Plaintiff Kolb hourly and instead informed the crew of three electricians that they would be paid on a piecework basis at a rate of $0.13 per watt based on the solar panel systems they installed in individual residences. For example, if the size of a solar panel system installed was 8,000 watts, the crew would be paid $1,040.00 (8,000 x $0.13) and the crew members would split the $1,040.00.

49. In one instance, when a project was located in Tucson, Arizona, the crew was paid on a piecework basis at a rate of $0.16 per watt and the crew was required to pay for their own hotel accommodations.

50. Despite the change to payment by piecework, Plaintiff Kolb remained an employee of Defendants and was entitled to overtime pay for hours worked over 40 per week.

51. Defendants' maintained control over Plaintiff Kolb. The crew continued to report to and take direction from a P.I.C. Construction project manager and/or field supervisor. The crew was required by P.I.C. Construction to arrive at Defendants' office location in the morning, pick up a company vehicle, pick up a project folder from P.I.C. Construction for the project assigned to their crew, drive to Defendant's offsite warehouse and/or a supplier and obtain the materials necessary for the project, drive to the assigned project location, perform the solar panel system installation and related electrical work, take photos of the completed installation, complete the project paperwork, then return to Defendant's office location and turn in the completed project paperwork, submit the photos of the completed installation and return the company vehicle.

52. The crew completed approximately 11 projects on a piecework basis between in or around November 15, 2013 through in or around December 11, 2013.

///

///

53. In addition, although Plaintiff was not terminated until December 11, 2013, he was not paid any compensation for the last three projects the crew completed for Defendants.

## COUNT ONE

**(Failure To Pay Overtime – 29 U.S.C. § 207)**

**(All Plaintiffs Against all Defendants)**

54. Plaintiffs incorporate by reference all the above allegations as though fully set forth herein.

55. Plaintiffs were non-exempt employees entitled to the statutorily mandated overtime pay.

56. Defendants failed to comply with 29 U.S.C. § 207 in that Plaintiffs worked for Defendants in excess of 40 hours per week, but Defendants failed to pay Plaintiffs for those excess hours at the rate of one and one-half times Plaintiff's regular rate of pay as required by the FLSA.

57. Defendants' failure to pay overtime to Plaintiffs was willful. Defendants knew Plaintiffs were working overtime without pay, and had no reason to believe its failure to pay overtime was not a violation of the FLSA.

58. Plaintiffs are entitled to statutory remedies provided pursuant to 29 U.S.C. § 216(b), including but not limited to double damages and attorneys' fees.

## COUNT TWO

**(Failure to Timely Pay Wages Due – Arizona Wage Statutes)**

**(All Plaintiffs Against P.I.C. Construction, Inc.)**

59. Plaintiffs incorporate by reference all above allegations as though fully set forth herein.

60. Defendant P.I.C. Construction was aware of its obligation to pay timely wages due pursuant to A.R.S. § 23-351.

61. Defendants were aware that, under A.R.S. § 23-353, when Plaintiffs' employment terminated, it was obligated to pay all wages due to Plaintiff.

1    62.    Defendants failed to timely pay Plaintiffs their legal wages on each regular pay day without a good faith basis for doing so.

2    63.    Defendants have willfully failed and refused to timely pay regular and overtime wages due to Plaintiffs. As a result of Defendant's unlawful acts, Plaintiffs are entitled to the statutory remedies provided pursuant to A.R.S. § 23-355.

**COUNT THREE**

**(Breach of Contract)**

**(Plaintiff Bishop Against P.I.C. Construction, Inc.)**

64.    Plaintiff Bishop incorporates by reference all above allegations as though fully set forth herein.

65.    Defendant P.I.C. Construction expressly agreed to pay Plaintiff Bishop eight percent (8%) commission based on net profits.

66.    Defendant P.I.C. Construction breached the terms of its agreement with Plaintiff Bishop by willfully failing to pay Plaintiff Bishop $25,000 in earned commissions.

67.    Defendant P.I.C.'s breach of its agreement with Plaintiff Bishop has caused Plaintiff Bishop damages in an amount to be proven at trial. Upon information and belief, the specific amount owed to Plaintiff Bishop is contained in documents within Defendant's control.

68.    Considering that this claim arises out of contract, Plaintiff Bishop is entitled to recover his reasonable attorneys' fees and costs pursuant to A.R.S. 12-341.01.

**COUNT FOUR**

**(In the Alternative Breach of Contract)**

**(Plaintiffs Adkins and Kolb only against P.I.C. Construction, Inc.)**

69.    Plaintiffs Adkins and Kolb incorporate by reference all of the above allegations as though fully set forth herein.

70.    In the alternative, if Plaintiffs Adkins and Kolb are determined to not be employees of Defendants from in or around November 15, 2013 to in or around December

11, 2013, they nevertheless are entitled to the promised compensation from Defendants for the work they performed on Defendants behalf.

71. Defendant expressly and orally agreed to pay Plaintiffs Adkins and Kolb on a piece meal basis.

72. Plaintiffs Adkins and Kolb fully complied with the terms of their agreement with the Defendant.

73. Defendant breached the terms of its agreement with Plaintiffs Adkins and Kolb by willfully failing to pay Plaintiffs Adkins and Kolb the amount owed in compensation.

74. Defendant's breach of its agreement with Plaintiffs Adkins and Kolb has caused Plaintiffs Adkins and Kolb damages in an amount to be proven at trial. Upon information and belief, the specific amount owed to Plaintiffs Adkins and Kolb is contained in documents within Defendant's control.

75. Considering that this claim arises out of contract, Plaintiffs Adkins and Kolb are entitled to recover their reasonable attorneys' fees and costs pursuant to A.R.S. '12-341.01.

**REQUESTED RELIEF**

WHEREFORE, Plaintiffs pray:

A. For the Court to declare and find that the defendant committed one or more of the following acts:

  i. violated overtime provisions of the FLSA, 29 U.S.C. § 207, by failing to pay overtime wages to Plaintiff;

  ii. willfully violated the Arizona wage act by failing to timely pay all wages due to Plaintiffs;

B. For the Court to award compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b) and /or treble damages pursuant to A.R.S. § 23-355, to be determined at trial;

C. For the Court to award restitution;

D. For the Court to award Plaintiffs' reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b), A.R.S. § 23-364 (G), and A.R.S. §§ 12-341 and 12-341.01;

E. For the Court to award pre- and post-judgment interest;

F. For the Court to award Plaintiffs' resulting consequential damages, in an amount to be proven at trial; and,

G. For such other monetary, injunctive, equitable, and declaratory relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED: February 6, 2014

>BONNETT, FAIRBOURN, FRIEDMAN
>& BALINT, P.C.
>
>By /s/ Wendy J. Harrison
>Wendy J. Harrison
>Ty D. Frankel
>2325 E. Camelback Road, Ste. 300
>Phoenix, Arizona 85016
>Telephone:  602-274-1100
>Facsimile:   602-274-1199
>Attorneys for Plaintiffs